[No. B080282. Second Dist., Div. Seven. Aug. 16, 1994.]

SONDRA WILCOX et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RONALD J. PETERS et al., Real Parties in Interest.

**COUNSEL**

Yvonne M. Renfrew for Petitioners.

No appearance for Respondent.

Hadsell & Stormer, Dan Stormer, Carol A. Klauschie and Dori E. Miles for Real Parties in Interest.

**OPINION**

**JOHNSON, J.**—In her petition for writ of mandate Sondra Wilcox, a cross-defendant below, challenges the ruling of the trial court denying her motion to strike the cross-complaint against her for damages and injunctive relief based on restraint of trade and defamation. The motion to strike was based on California's anti-SLAPP (strategic lawsuits against public participation) suit statute (Code Civ. Proc., § 425.16). We issued an alternative writ

of mandate and stayed proceedings in the trial court pending our decision on the merits. For the reasons set forth below we have determined the cross-complaint is subject to a motion to strike under the anti-SLAPP-suit statute and cross-complainants have failed to establish a probability they will prevail on their claims against petitioner.

## FACTS AND PROCEEDINGS BELOW

This cause and its companion, *Saunders v. Superior Court, post,* 832 [33 Cal.Rptr.2d 438], arise out of the practice of "direct contracting" under which a certified shorthand reporter or association of reporters contracts with a major consumer of reporter services, such as an insurance company, for the exclusive right to report depositions taken by attorneys representing that consumer.

Plaintiffs in *Saunders* are certified shorthand reporters who brought suit against defendants, also certified shorthand reporters, alleging "direct contracting" as practiced by defendants constitutes an unfair business practice, intentional interference with plaintiffs' prospective economic advantages and interference with existing contracts.[1] The reporter defendants in *Saunders* are members of an association known as the California Reporting Alliance, referred to by the parties as CRA or the Alliance. Also named as defendants are two insurance companies which entered into "direct contracting" agreements with the reporter defendants through CRA. Petitioner Wilcox is not a plaintiff in the *Saunders* suit but she did make a financial contribution to support the litigation.

The reporter defendants in *Saunders* filed a cross-complaint against the plaintiffs in that action as well as other individuals including Wilcox and her reporting agency for defamation and conspiracy to unlawfully restrain trade through a boycott of defendants' reporting services. (We will refer to Wilcox and her agency together as Wilcox or petitioner.)

The first amended cross-complaint alleges Wilcox distributed a memorandum to various other shorthand reporters which stated, among other things: many shorthand reporting agencies were banding together "to 'permanently put the Alliance to rest once and for all' "; reporters were suing CRA and its members for extortion and racketeering; and reporters should tell attorneys representing insurance companies and their policyholders about this litigation so that the "threat" might be enough to make the insurers "back off" from entering into direct contracting agreements with CRA. The memorandum asked each reporter to contribute $100 to the lawsuit against CRA. The

---

[1] In *Saunders,* filed concurrently, we hold the trial court erred in sustaining defendants' demurrers to plaintiffs' complaint.

cross-complaint also alleges Wilcox told CRA members she would no longer refer them any work or network with them because they were affiliated with CRA.

Characterizing the cross-complaint as a SLAPP suit,[2] Wilcox filed a motion to strike as to her and her reporting agency pursuant to Code of Civil Procedure section 425.16.[3] The trial court denied the motion on the ground "the responding parties have proffered sufficient evidence in opposition to the motion to establish the probability they will prevail on their claims."

Wilcox filed a petition for writ of mandate in this court seeking to overturn the trial court's denial of her motion to strike. As previously noted, we issued an alternative writ and stayed the proceedings below.

DISCUSSION

I.  *Overview of Strategic Lawsuits Against Public Participation ("SLAPP" Suits).*

■ Litigation which has come to be known as SLAPP is defined by the sociologists who coined the term as "civil lawsuits . . . that are aimed at preventing citizens from exercising their political rights or punishing those who have done so." (Canan & Pring, Strategic Lawsuits Against Public Participation (1988) 35 Social Problems 506.) The paradigm SLAPP is a suit filed by a large land developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developers' plans. (See, e.g., *Gordon v. Marrone* (1992) 155 Misc.2d 276 [590 N.Y.S.2d 649, 651]; *Protect Our Mountain v. District Court* (Colo. 1984) 677 P.2d 1361, 1364; *Webb v. Fury* (1981) 167 W.Va. 434 [282 S.E.2d 28]; Note, *Counterclaim and Countersuit Harassment of Private Environmental Plaintiffs: The Problem, Its Implications, and Proposed Solutions* (1975) 74 Mich. L.Rev. 106, 112, 113.) SLAPP's, however, are by no means limited to environmental issues (see, e.g., *Brownsville Golden Age Nursing Home, Inc. v. Wells* (3d Cir. 1988) 839 F.2d 155, 157 [suit by nursing home against private citizens who had complained to government officials about conditions in plaintiff's facility]), nor are the defendants necessarily local organizations with limited resources. (See, e.g., *Sierra Club v. Butz* (N.D.Cal. 1972) 349 F.Supp. 934.)

---

[2]The nature of a SLAPP suit is discussed more fully below. (See pt. I, pp. 815-817, *post.*) In very general terms it is a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights. (See *Hull v. Rossi* (1993) 13 Cal.App.4th 1763, 1769 [17 Cal.Rptr.2d 457].)

[3]As discussed more fully below, see pages 817-819, Code of Civil Procedure section 425.16 authorizes a "special motion to strike" an alleged SLAPP suit based on the pleadings and declarations of the parties.

The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress. (Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs* (1993) 26 Loyola L.A. L.Rev. 395, 402-403.) Plaintiffs in these actions typically ask for damages which would be ruinous to the defendants. (See, e.g., *Protect Our Mountain* v. *District Court, supra,* 677 P.2d at p. 1364 [developer sought $10 million compensatory and $30 million punitive damages]; Barker, *supra,* 26 Loyola L.A. L.Rev. at p. 403 [estimating damage claims in SLAPP's average $9.1 million].)

SLAPP suits are brought to obtain an *economic* advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. (Comment, *Strategic Lawsuits Against Public Participation: An Analysis Of The Solutions* (1991) 27 Cal. W. L.Rev. 399, 402; Barker, *supra,* 26 Loyola L.A. L.Rev. at p. 406.) Indeed, one of the common characteristics of a SLAPP suit is its lack of merit. (Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs, supra,* 26 Loyola L.A. L.Rev. at pp. 396, 399.) But lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. (*Id.* at p. 405.) As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. (*Gordon* v. *Marrone, supra,* 590 N.Y.S.2d at p. 656; Brecher, *The Public Interest and Intimidation Suits: A New Approach* (1988) 28 Santa Clara L.Rev. 105, 114; Comment, *Strategic Lawsuits Against Public Participation: An Analysis of the Solutions, supra,* 27 Cal. W. L.Rev. at p. 404.) The SLAPP strategy also works even if the matter is already in litigation because the defendant/cross-complainant hopes to drive up the cost of litigation to the point where the plaintiff/cross-defendant will abandon its case or have less resources available to prosecute its action against the defendant/cross-complainant and to deter future litigation. (Note, *Counterclaim and Countersuit Harassment of Private Environmental Plaintiffs: The Problem, Its Implications, and Proposed Solutions, supra,* 74 Mich. L.Rev. at pp. 109-110.)

Thus, while SLAPP suits "masquerade as ordinary lawsuits" the conceptual features which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so. (Pring, *SLAPPs: Strategic Lawsuits Against Public Participation* (1989) 7

Pace Envtl. L.Rev. 3, 5-6, 9.)[4] Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPP's. Instead, the SLAPPer considers any damage or sanction award which the SLAPPee might eventually recover as merely a cost of doing business. (Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs*, *supra*, 26 Loyola L.A. L.Rev. at pp. 406-407.) By the time a SLAPP victim can win a "SLAPP-back" suit years later the SLAPP plaintiff will probably already have accomplished its underlying objective. Furthermore, retaliation against the SLAPPer may be counter-productive because it ties up the SLAPPee's resources even longer than defending the SLAPP suit itself. (*Id.* at p. 432; Comment, *Strategic Lawsuits Against Public Participation: An Analysis of the Solutions*, *supra*, 27 Cal. W. L.Rev. at p. 403.)

For these reasons, courts and legislatures have looked for procedural remedies which would allow prompt exposure and dismissal of SLAPP suits. (See, e.g., *Protect Our Mountain* v. *District Court*, *supra*, 677 P.2d at pp. 1368-1369 [motion to dismiss with heightened standard applied to plaintiff]; *Webb* v. *Fury*, *supra*, 282 S.E.2d 28, 47 (dis. opn. of Neely, J.) [require plaintiff to plead more specifically where defendant's conduct is prima facie protected by First Amendment; early hearing on merits of plaintiff's claim and defendant's constitutional defenses].)

California's response to SLAPP suits was to enact Code of Civil Procedure section 425.16, discussed below.

## II. *California's Legislative Response to SLAPP Suits.*

Senate Bill No. 1264, 1991-1992 Regular Session, added a new section 425.16 to the Code of Civil Procedure[5] effective January 1, 1993. (Stats. 1992, ch. 726, § 2.)

This legislation provides in relevant part:

"(b) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue

---

[4]In enacting Code of Civil Procedure section 425.16 the Legislature found and declared, "[T]here has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." (Code Civ. Proc., § 425.16, subd. (a).)

[5]Future statutory references are to the Code of Civil Procedure, unless otherwise noted.

shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

"If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact if that determination shall be admissible in evidence at any later stage of the case, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(e)   As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or any written or statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

"(f)   The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper.

"(g)   All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The motion shall be noticed for hearing not more than 30 days after service unless the docket conditions of the court require a later hearing. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision."

The parties raise four issues under the anti-SLAPP statute. (1) Do any of the causes of action against petitioner arise from an act of petitioner in furtherance of her First Amendment rights so as to trigger a special motion to strike under the statue? (2) Who has the burden of proof on this issue? (3) Assuming a special motion to strike is triggered by the cross-complaint, what showing must the cross-complainants make in order to establish a

"probability" they will prevail on their claims? (4) Did the trial court err in finding cross-complainants established such a probability? We address these issues below.

### III. *Petitioner Made a Sufficient Showing the Causes of Action Against Her Arose From Acts in Furtherance of Her Rights of Petition and Free Speech in Connection With a Public Issue.*

#### A. *The Defendant in an Alleged SLAPP Suit Bears the Initial Burden of Showing the Suit Falls Within the Class of Suits Subject to the Special Motion to Strike.*

As noted above, section 425.16 does not apply in every case where the defendant may be able to raise a First Amendment defense to a cause of action. Rather, it is limited to exposing and dismissing SLAPP suits— lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" "in connection with a public issue." (§ 425.16, subds. (a), (b).)

Although the statute clearly places the burden on the plaintiff or cross-complainant to establish a probability of prevailing on the claim (§ 425.16, subd. (b)), this burden does not arise unless the claim is one falling within the ambit of the statute. The statute is silent as to whether the defendant, as the moving party, has the burden of establishing the action arises out of acts in furtherance of defendant's First Amendment rights in connection with a public issue or whether the plaintiff bears the burden of showing its claim does not arise out of such acts by the defendant. A related question is what the statute means by the "furtherance" of the defendant's "right of petition or free speech." If the defendant's act is not constitutionally protected how can doing that act be "in furtherance" of the defendant's constitutional rights? On the other hand, if the defendant's act *is* constitutionally protected then, by definition, there is no probability the plaintiff will prevail on its claim. (*Protect Our Mountain* v. *District Court, supra,* 677 P.2d at pp. 1368-1369)

Traditionally, a party seeking to benefit from a statute bears the burden of making a prima facie showing the statute applies to her. We see no reason why that rule should not apply to a party seeking a special motion to strike under section 425.16. It is not only logical to put this burden on the party seeking the benefit of section 425.16, it is fundamentally fair that before putting the plaintiff to the burden of establishing probability of success on the merits the defendant be required to show imposing that burden is justified by the nature of the plaintiff's complaint.

The legislative history of section 425.16 supports our conclusion. The first legislative proposal to deal with SLAPP suits would have erected a pleading bar to suits infringing on constitutional rights thus putting the burden of justifying the action entirely on the plaintiff. (Cf. Civ. Code, § 1714.10, subd. (a).) The Governor vetoed this proposal. (Stokes, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992* (Cont.Ed.Bar Dec. 1992) 14 Civ. L. Rep. 485, 487.) The Legislature rejected subsequent proposals to deal with SLAPP's through motions to strike or motions for summary judgment which would result in putting the burden entirely on the defendant. (*Ibid.*) Section 425.16 appears to compromise between these two positions by placing the initial burden on the defendant to show the action should be tested under the provisions of subdivision (b) and the burden on the plaintiff to show the action meets that test.

We do not believe the Legislature intended that to invoke the special motion to strike the defendant must first establish its actions are constitutionally protected under the First Amendment as a matter of law. If this were so the second clause of subdivision (b) of section 425.16 would be superfluous because by definition the plaintiff could not prevail on its claim. (See discussion, *supra*, p. 819)

■ We conclude, therefore, the statute requires the defendant to make a prima facie showing the plaintiff's suit arises "from any act of [defendant] in furtherance of [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b).) The defendant may meet this burden by showing the act which forms the basis for the plaintiff's cause of action was a written or oral statement made before a legislative, executive, or judicial proceeding; or such a statement in connection with an issue under consideration or review by a legislative, executive, or judicial body; or such a statement was made in a place open to the public or a public forum in connection with an issue of public interest. (§ 425.16, subd. (e).) Thus, if the defendant's act was a lawsuit against a developer the defendant would have a prima facie First Amendment defense. (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1136-1137 [270 Cal.Rptr. 1, 791 P.2d 587].) But, if the defendant's act was burning down the developer's office as a political protest the defendant's motion to strike could be summarily denied without putting the developer to the burden of establishing the probability of success on the merits in a tort suit against defendant.

It should be noted the definition of an "act in furtherance of" a person's First Amendment rights is not limited to oral and written statements.

(§ 425.16, subd. (e).) Thus if the plaintiff's suit arises out of the defendant's constitutionally protected conduct, such as a peaceful economic boycott the plaintiff should be required to satisfy the statute's requirements. (*NAACP* v. *Claiborne Hardware* (1982) 458 U.S. 886 [73 L.Ed.2d 1215, 102 S.Ct. 3409]; *State of Mo.* v. *Nat. Organization for Women* (8th Cir. 1980) 620 F.2d 1301.)

> B. *Petitioner Made a Sufficient Showing the Causes of Action Against Her Arose From Acts in Furtherance of Her Rights of Petition and Free Speech in Connection With a Public Issue.*

In ruling cross-complainants had established a probability of success on their claims, the trial court impliedly found petitioner had satisfied the threshold requirement of showing the claims arose from an act in furtherance of her right of petition or free speech. (§ 425.16, subd. (b).) The record supports the trial court's determination on this threshold issue.

Cross-complainants concede the issue of "direct contracting" is a public issue within the meaning of section 425.16, subdivisions (b) and (e). They contend, however, petitioner failed to show the acts alleged in the cross-complaint were done "in connection with" the consideration of direct contracting by any legislative, executive or judicial body as required by those same subdivisions. They argue there is no rational connection between legislative, administrative and judicial challenges to direct contracting and petitioner's alleged defamatory statements and conspiracy with others to injure cross-complainants in their businesses.

This argument points up why traditional pleading-based motions such as demurrers and motions to strike are ineffective in combating SLAPP's and why the Legislature believed there was a need for a "special motion to strike" as authorized by section 425.16. In a SLAPP complaint the defendant's act of petitioning the government is made to appear as defamation, interference with business relations, restraint of trade and the like. For this reason the Legislature provided, in determining a motion under the anti-SLAPP statute, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).)

Here petitioner's alleged defamatory statements were clearly made in connection with the underlying judicial challenge to direct contracting. As shown by the cross-complaint itself those statements were made in the

context of exhorting shorthand reporters to contribute to the cost of pursing that litigation. Thus, there is a strong showing those statements are rationally connected to the litigation itself. (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co, supra,* 50 Cal.3d at pp. 1132, 1135-1136; *City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 535 [183 Cal.Rptr. 86, 645 P.2d 137]; cf. *McDonald* v. *Smith* (1985) 472 U.S. 479, 484-485 [86 L.Ed.2d 384, 389-390, 105 S.Ct. 2787].) (See discussion, *post,* p. 826.)

As to the claims involving restraint of trade, "the constitutional right to petition for redress of grievances [establishes] that there is no antitrust liability for petitioning any branch of government, even if the motive is anticompetitive." (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co., supra,* 50 Cal.3d at p. 1133.) The only exception to this rule is for sham petitioning. (*Hi-Top Steel Corp.* v. *Lehrer* (1994) 24 Cal.App.4th 570, 574 [29 Cal.Rptr.2d 646].) There is case law supporting the proposition petitioning includes acts designed to influence public opinion concerning an issue before a legislative or administrative body. (*Eastern R. Conf.* v. *Noerr Motors* (1961) 365 U.S. 127, 142-144 [5 L.Ed.2d 464, 473-475, 81 S.Ct. 523] [hereafter *Noerr*]; (*Webb* v. *Fury, supra,* 282 S.E.2d at p. 42.) Moreover, the fact a defendant's petitioning activity includes an economic boycott does not necessarily deprive that activity of constitutional protection. (*NAACP* v. *Claiborne Hardware, supra,* 458 U.S. at pp. 913-914 [73 L.Ed.2d at pp. 1236-1237]; *State of Mo.* v. *Nat. Organization for Women, supra,* 620 F.2d at p. 1315.) Assuming petitioner engaged in a conspiracy to boycott the cross-complaining shorthand reporters, an allegation she denies, such activity is at least arguably protected by the petition clause of the First Amendment and the trial court properly shifted the burden to the cross-complainants on this issue.[6]

---

[6]At oral argument cross-complainants argued for the first time the Wilcox memorandum involved "commercial speech" and the Legislature did not intend the anti-SLAPP legislation to protect this form of expression. The statute, however, refers to a "person's right of . . . free speech" without qualification. (§ 425.16, subd. (b).) Cross-complainants have not cited, nor has our research disclosed, any legislative history suggesting the Legislature intended to exclude commercial speech from the protection afforded by section 425.16. To the contrary, the statute has been criticized for the very reason it *does* cover commercial speech. (Stokes, *supra, SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992, supra,* 14 Civ. L. Rep. at p. 488.) Furthermore, the view SLAPP suits do not include suits aimed at commercial speech was rejected by the Ninth Circuit in *In re Airport Car Rental ·Antitrust Litigation* (9th Cir. 1982) 693 F.2d 84, 86. Alternatively, cross-complainants argued for commercial speech to be afforded First Amendment protection it must concern lawful activity. (*Central Hudson Gas & Elec.* v. *Public Serv. Comm'n* (1980) 447 U.S. 557, 566 [65 L.Ed.2d 341, 351, 100 S.Ct. 2343].) They contended using the threat of litigation to get the insurers to "back off" from entering into contracts with CRA was an unlawful activity. We

IV. *The Cross-complainants Failed to Satisfy the Requirement of Showing a Probability They Will Prevail on Their Claims Against Petitioner.*

A. *To Establish "A Probability That the Plaintiff Will Prevail on the Claim" the Plaintiff Must Make a Prima Facie Showing of Facts Which Would, If Proved at Trial, Support a Judgment in Plaintiff's Favor.*

Section 425.16, subdivision (b) requires the plaintiff to establish "a probability that the plaintiff will prevail on the claim." We must first determine what the Legislature meant by a "probability" the plaintiff will prevail. In doing so we look to the Legislative purpose behind the statute as well as the constitutional rights of the plaintiff to due process and a jury trial.

As discussed above, the common features of SLAPP suits are their lack of merit and chilling of defendants' valid exercise of free speech and the right to petition the government for a redress of grievances. (See discussion, *ante*, pp. 815-817.) Section 425.16 was intended to address those features by providing a fast and inexpensive unmasking and dismissal of SLAPP's. (§ 425.16, subds. (a), (b), (f) and (g); Stokes, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992, supra*, 14 Civ. L. Rep. at p. 486.) It is also presumed the Legislature intended to enact a valid statute. (*People* v. *Davenport* (1985) 41 Cal.3d 247, 264 [221 Cal.Rptr. 794, 710 P.2d 861].) Anti-SLAPP legislation, therefore, must be fast, inexpensive and *constitutional* or it is of no benefit to SLAPP victims, the court or the public. In order to satisfy due process, the burden placed on the plaintiff must be compatible with the early stage at which the motion is brought and heard (§ 425.16, subds. (f) and (g)) and the limited opportunity to conduct discovery (subd. (g)). In order to preserve the plaintiff's right to a jury trial the court's determination of the motion cannot involve a weighing of the evidence. (*Looney* v. *Superior Court* (1993) 16 Cal.App.4th 521, 537-538 [20 Cal.Rptr.2d 182].)

Cases involving similar statutes have held the requirement of establishing a substantial or reasonable probability of success means only that the plaintiff must demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. If either of these requirements is not met, the motion to strike must be granted; if both are satisfied, it must be denied. (*Hung* v. *Wang* (1992) 8 Cal.App.4th 908, 931

---

have found no authority to support this proposition where, as here, the threatened lawsuit is meritorious. (See *Saunders* v. *Superior Court, supra, post*, at p. 832.)

[11 Cal.Rptr.2d 113].) This standard is much like that used in determining a motion for nonsuit or directed verdict. (See *Hung* v. *Wang, supra,* 8 Cal.App.4th at pp. 929, 931 [construing Civil Code section 1714.10]; *Rowe* v. *Superior Court* (1993) 15 Cal.App.4th 1711, 1723 [19 Cal.Rptr.2d 625] [construing section 425.14]; *Looney* v. *Superior Court, supra,* 16 Cal.App.4th at p. 538 and *Aquino* v. *Superior Court* (1993) 21 Cal.App.4th 847, 856 [26 Cal.Rptr.2d 477] [construing section 425.13].)

We believe section 425.16, subdivision (b) should be given a similar construction. As discussed above, SLAPP suits are distinguishable from ordinary tort suits by their lack of merit. One of the purposes of section 425.16, like Civil Code section 1714.10 construed in *Hung,* is to eliminate such meritless litigation at an early stage. (§ 425.16, subd. (a); *Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 931.) This statutory purpose is met by requiring the plaintiff to demonstrate sufficient facts to establish a prima facie case.

Section 425.16, however, is not totally analogous to sections 425.13, 425.14 and Civil Code section 1714.10. One difference is that section 425.16 places an added burden on the plaintiff to meet the defendant's constitutional defenses. (§ 425.16, subd. (b); Stokes, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992, supra,* 14 Civ. L. Rep. at p. 491.) Nevertheless, we believe this burden should be met in the same manner the plaintiff meets the burden of demonstrating the merits of its causes of action: by showing the defendant's purported constitutional defenses are not applicable to the case as a matter of law or by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses.

Another distinction, one which cross-complainants find significant, is that section 425.16 requires only a showing of "probability" of prevailing while other statutes require the plaintiff to show "a reasonable probability" (Civ. Code, § 1714.10) or "a substantial probability" (§ 425.13) of prevailing. According to cross-complainants, absence of the adjectives "reasonable" or "substantial" suggests the Legislature intended to impose a lower threshold under section 425.16 than it imposed in similar statutes. There is some support for this argument in *Hung* v. *Wang, supra,* 8 Cal.App.4th at page 929 in which the court observed, "The adjective 'reasonable' requires the petitioner to do more than demonstrate *some* chance of winning; the petitioner must show that, given the evidence, he or she has a substantial case." We note, too, Senate Bill No. 1264 originally required a "substantial" probability but was amended in the Assembly to eliminate the adjective "substantial."

We do not believe by eliminating the adjective "substantial" the Legislature intended a threshold lower than a "reasonable probability." Surely it did

not mean the court should accept an "unreasonable" probability. Rather, it appears the Legislature eliminated the word "substantial" in order to avoid the implication the trial court was to weigh the evidence which, as noted above, would raise a serious constitutional problem. (See Stokes, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992*, *supra*, 14 Civ. L. Rep. at p. 489.) Thus, we believe the test formulated in *Hung* v. *Wang*, *supra*, for determining a "reasonable probability" should apply to motions under section 425.16.

### B. *Cross-complainants Failed to Establish a Probability of Prevailing on the Defamation Claim Against Petitioner.*

The cross-complaint for defamation is based on a memorandum circulated by petitioner to other shorthand reporters in which she describes a lawsuit to be filed against CRA and exhorts the recipients of the memorandum to contribute financially to the cost of this litigation. The memorandum is part of the record on the motion to strike. In referring to the lawsuit to be filed against CRA, the memorandum states in relevant part, "Some of the things they are being sued for are: anti-trust, violations of the Business and Professions Code, interference with business opportunities, predatory recruitment tactics by CRA, violation of the NSRA Code of Ethics, extortion and racketeering. [¶] The fight for the injunction requires $200,000. Each agency is contributing $2,000 to this end. [¶] Reporters within agencies are each being asked to contribute $100. I think that is a fair amount and hope that you do, too."

The cause of action for libel alleges in relevant part, "Sondra Wilcox published to a number of shorthand reporters a written memorandum which falsely stated, among other things, that cross-defendants were suing cross-complainants and other CRA members/subcontractors for, among other things, violations of the NSRA Code of Ethics, extortion and racketeering." The cross-complaint seeks punitive damages against petitioner on the ground she published this memorandum "maliciously, fraudulently, oppressively and despicably, and with the wrongful intention of injuring cross-complainants, with an improper and evil motive amounting to malice, and in conscious disregard of cross-complainants' rights."

■ We conclude the fundamental right to petition the government for redress of grievances provides Wilcox with at least a qualified privilege which the cross-complainants have not demonstrated they can overcome.[7]

It is well settled the First Amendment creates a privilege from civil liability for actions constituting the exercise of the right to petition the

---

[7]We assume for purposes of discussion Wilcox's statements were defamatory although this is far from clear.

government for redress of grievances (*Noerr, supra,* 365 U.S. 127) and this right encompasses the act of filing a lawsuit whether it be to vindicate individualized wrongs or draw attention to issues of broad public significance and interest. (*City of Long Beach* v. *Bozek, supra* 31 Cal.3d 527, 533-534; *Protect Our Mountain* v. *District Court, supra,* 677 P.2d at p. 1365; *Sierra Club* v. *Butz, supra,* 349 F.Supp. at p. 937.)

In *Pacific Gas & Electric Co.* v. *Bear Stearns & Co., supra,* our Supreme Court made clear the tort defense based on the right to petition applies not only to litigants but to those who induce, encourage and support a lawsuit involving a "colorable claim." (50 Cal.3d at p. 1136.) In *Pacific Gas & Electric,* plaintiff brought an action against defendant, an investment brokerage firm, for various business torts alleging the firm had encouraged and financed a local water agency's suit for declaratory relief as to whether the agency could terminate its contract with plaintiff. In holding the petition privilege applicable to a defendant who finances litigation the court stated: "It is important to remember what PG&E is trying to achieve through this lawsuit. It seeks to enjoin Bear Stearns from further participation in the lawsuit in order to avert what it considers to be the irreparable harm of an adverse judgment. It is essentially seeking to abort the lawsuit by starving the litigant of funds. In *Sierra Club* v. *Butz,* [*supra*], too, there were, doubtless, persons who induced the representatives of the club to bring the action, and who provided financial assistance in support of the lawsuit, but were not named parties. Yet it would defeat the purpose of assuring free access to the courts, and cause a flood of oppressive derivative litigation, to assess tort liability for their activities." (*Ibid.*)[8]

If the defendant's financing of a lawsuit is constitutionally protected it follows that speech exhorting others to do the same is also protected. The only question is whether the protection is absolute or qualified. Courts which have considered defamation claims in the context of the right to petition have generally applied a qualified immunity. (*Kahn* v. *Bower* (1991) 232 Cal.App.3d 1599, 1615 [284 Cal.Rptr. 244]; *McDonald* v. *Smith, supra,* 472 U.S. 479, 485 [86 L.Ed.2d 384, 389-390]; *Harris* v. *Adkins* (1993) 189 W.Va. 465 & fn. 8 [432 S.E.2d 549, 552], citing cases.) We have found no California case addressing this question in the present context although we note that had Wilcox been a *party* to the *Saunders'* action she would have enjoyed an absolute immunity from suit under the litigation privilege of Civil Code section 47, subdivision (b). (See *Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1194-1195 [17 Cal.Rptr.2d 828, 847 P.2d 1044].)

We need not determine whether the right to petition confers an absolute privilege as to statements made in furtherance of that right. Nor do we

---

[8]In a footnote accompanying the quoted text, the court implied PG&E's lawsuit was a SLAPP suit.

consider whether the litigation privilege of Civil Code section 47, subdivision (b) applies to a nonparty who participates in the litigation through financial contributions and other support activities such as fund raising. Even if petitioner's statements are only entitled to a qualified protection, cross-complainants have failed to produce any evidence negating such protection. Courts have universally declared common law malice—ill will—does not defeat the protection afforded by the right to petition the government. As the Supreme Court affirmed in *Noerr, supra,* the freedom to petition the government cannot reasonably be allowed to disappear merely because the petitioner acts with "malice." (365 U.S. at p. 139 [5 L.Ed.2d at p. 472].) "[T]he motive, even if malicious, of defendants is unimportant if legal ground existed upon which to predicate" their petition. (*Paskle* v. *Williams* (1931) 214 Cal. 482, 487 [6 P.2d 505]; see also *Matossian* v. *Fahmie* (1980) 101 Cal.App.3d 128, 136-137 [161 Cal.Rptr. 532]; *Sierra Club* v. *Butz, supra,* 349 F.Supp. at p. 938.) The petition privilege is defeated, if at all, only by a showing of "actual malice"—knowledge of the falsity of the allegations or with reckless disregard for their truth or falsity. (*City of Long Beach* v. *Bozek, supra,* 31 Cal.3d at p. 534.) The cross-complaint does not allege Wilcox knew her assertions about what would be claimed in the complaint were false when she made them or that she made them in reckless disregard for their truth or falsity nor have cross-complainants produced any evidence showing actual malice on the part of Wilcox. Thus cross-complainants have failed to meet either of the requirements imposed by section 425.16 and the defamation claim against Wilcox must be stricken. (*Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 931.)

### C. Cross-complainants Failed to Establish a Probability of Prevailing on the Conspiracy Claims Against Petitioner.

In addition to the claim for defamation based on petitioner's own statements, the cross-complaint seeks to impose liability on petitioner for conspiring with the other cross-defendants to defame cross-complainants, injure them through unlawful and unfair business practices and intentional interference with their prospective business relationships.

A complaint seeking to impose liability on a defendant on the basis of conspiracy must allege: "(1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting." (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063].) The cross-complaint contains the necessary allegations. However, the cross-complainants have failed to make a prima facie showing of facts to support the first of those allegations.

As we explained above (p. 823), to determine whether the plaintiff has met its burden of establishing a probability of prevailing on its claim the

court applies a standard similar to that applied to motions for nonsuit. On a motion for nonsuit the court may not weigh the evidence or determine questions of credibility but must accept all evidence favorable to the plaintiff as true and indulge every legitimate favorable inference that may be drawn from it. Only when no evidence of sufficient substantiality exists to support a judgment for the plaintiff may the defendant's motion be granted. (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839 [206 Cal.Rptr. 136, 686 P.2d 656].) The difference between a motion for nonsuit and a motion to strike under section 425.16 is that on a motion for nonsuit the court ignores conflicting evidence (36 Cal.3d at p. 838) while on a motion under section 425.16 "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).)

■ In order to establish liability based on conspiracy, the plaintiff must show the defendant and at least one other concurred in the tortious scheme with knowledge of its unlawful purpose. (*Ahrens* v. *Superior Court* (1988) 197 Cal.App.3d 1134, 1150 [243 Cal.Rptr. 420].) The requisite concurrence and knowledge may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators as well as other circumstances. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 316 [70 Cal.Rptr. 849, 444 P.2d 481].) However, "[a] reasonable inference ' "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work." ' . . . It must logically flow from other facts established in the action. (Evid. Code, § 600, subd. (b).)" (*People* v. *Austin* (1994) 23 Cal.App.4th 1596, 1604 [28 Cal.Rptr.2d 885].)

■ The cross-complainants in this action have failed to produce legally sufficient evidence Wilcox concurred with at least one other person in a tortious scheme to injure cross-complainants.

Cross-complainants have no direct evidence of an agreement between Wilcox and any other person to injure them in their reputations or business ventures. Instead, they rely on inferences they contend can be drawn from: (1) a memorandum distributed by Wilcox stating in part, "We are all banding together . . . to permanently put the Alliance to rest once and for all" and exhorting other shorthand reporters to contribute to the lawsuit against CRA and its members; (2) the similarities between the memorandum distributed by Wilcox and memoranda distributed by two other reporters; (3) a meeting between Wilcox and Mark Saunders, the lead plaintiff in the underlying complaint; (4) a declaration from Claudia Blake, a CRA member, relating similar calls from Wilcox and other cross-defendants telling Blake they

would no longer "network" with her agency because of her affiliation with CRA. We examine each of these items of evidence below.

(1) *The Wilcox memorandum.*

As we have previously explained, there is nothing unlawful about contributing to a lawsuit or urging others to do the same unless the suit is a mere sham to cover the true purpose of interfering with the business dealings of a competitor. (See discussion, *ante*, p. 822.) There is no showing the underlying *Saunders* litigation is a sham. Indeed, in light of our opinion in that case, filed concurrently, such a claim would be untenable. Furthermore, the statement by Wilcox about "banding together . . . to permanently put the Alliance to rest . . ." was made in the context of the contemplated litigation and no reasonable juror could interpret it otherwise.

(2) *The Wilcox memorandum and the two memoranda from other cross-defendants.*

Cross-complainants contend an agreement can be inferred from the similarities between the Wilcox memorandum discussed above and memoranda distributed by reporter Beverly Izen and an anonymous author (presumably a reporter). The Wilcox and anonymous memoranda are similar in that they were both written in the summer of 1992 and both discuss the contemplated lawsuit against CRA. There are no other similarities. The anonymous memorandum discusses making the public aware of CRA's practices; the other two do not. The Izen memorandum urges free-lance reporters not to work for certain reporter agencies associated with CRA. Neither of the other two memoranda contains such a statement. Furthermore, the Izen memorandum was written in the spring 1993.

Again, nothing unlawful is suggested in the Wilcox or anonymous memoranda. Even if the Izen memorandum could be construed as calling for a boycott of certain reporting firms and assuming such a boycott would be unlawful, there is no evidence Wilcox was a recipient of that memorandum much less that she agreed with it or agreed to take the action urged in it.

(3) *The telephone conversation* between Wilcox and Saunders.

There is no evidence anything unlawful was agreed to in that telephone conversation.

(4) *The Blake declaration.*

Wilcox objected to introduction of this declaration at the hearing on the ground of hearsay. Presumably the trial court sustained the objection although it is not clear from the record. Ms. Blake states she received a

telephone call from another reporter, Tom Golding, who told her he would no longer network with her because of her affiliation with CRA. There is no objection to this statement. However, she goes on to state: "My agency received similar calls from Sondra Wilcox & Associates [and other reporters]." Cross-complainants argue the statement in reference to Wilcox is not hearsay because it was not introduced to prove the truth of the statement Wilcox would no longer network with Blake but merely to prove Wilcox spoke those words in order to show concerted action and agreement between Wilcox and other reporters.

Cross-complainants' argument might have merit if, for example, Wilcox had made the statement directly to Blake. It is clear from the declaration, however, the statement was made to someone else in Blake's office. How many people passed the message along before it got to Blake is anybody's guess but there would have to be a hearsay exception for each person in the chain for Blake's statement to be admissible. No such exceptions have been suggested.

■ Cross-complainants argue declarations submitted for the purpose of demonstrating a probability of prevailing in the action need not contain admissible evidence. Rather the plaintiff or cross-complainant need only "demonstrate the *existence* of sufficient evidence to establish a prima facie case." (*Rowe* v. *Superior Court, supra,* 15 Cal.App.4th at p. 1723, italics added.) The plaintiff need not actually produce such evidence at the hearing on the motion to strike. We reject this construction of the statute. In the very next sentence of its opinion the *Rowe* court stated: "[I]t is only necessary that plaintiff provide 'a sufficient prima facie showing of facts to sustain a favorable decision *if the evidence submitted* is credited.'" (*Ibid.*; quoting from *Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 931, italics added.) Implicit in this statement is the assumption the evidence referred to was admissible, or at least not objected to, otherwise there would be nothing for the trier of fact to credit. Here, Wilcox objected to the admissibility of the Blake declaration on hearsay grounds.

Even if Blake's statement were admissible it is much too thin a thread on which to hang the probability of proving conspiracy at trial.

### DISPOSITION

Let a peremptory writ issue directing the respondent court to vacate its order denying petitioner's motion to strike and to enter a new and different

order striking the cross-complaint in its entirety as to cross-defendants Sondra Wilcox and Sondra K. Wilcox & Associates, Inc.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied September 15, 1994, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied November 17, 1994.