Filed 4/29/21  Amezuca-Moll & Associates, P.C. v. Abernethy CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMEZCUA-MOLL & ASSOCIATES, P.C., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DAVID SCOTT ABERNETHY, <br><br> Defendant and Respondent. | G058692 <br><br> (Super. Ct. No. 30-2017-00927161) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Melissa R. McCormick, Judge.  Reversed and remanded.

Amezcua-Moll & Associates P.C., Rosemary Amezcua-Moll and Kelly K. Pfeiffer for Plaintiff and Appellant.

Ford & Diulio, Kristopher P. Diulio, Brendan M. Ford and Olivia S. Cannon for Defendant and Respondent.

\*         \*         \*

This is an appeal from the trial court's ruling granting a special motion to strike under Code of Civil Procedure section 425.16[1] (the anti-SLAPP statute). Defendant David Scott Abernethy filed the motion as to three causes of action in the third amended complaint filed by Amezcua-Moll & Associates, P.C. (the law firm), against Abernethy and others. This case relates to an underlying lawsuit. In brief, the law firm alleged that Abernethy, an attorney, contacted the plaintiff in the underlying lawsuit on behalf of the defendant and induced her to settle the case behind the law firm's back, which resulted in denying the law firm its fees. As relevant here, they allege Abernethy committed intentional interference with contractual relations, and two causes of action which derive from that claim, unfair business practices and a request for an accounting.

The trial court determined all three causes of action arose from protected activity, because the anti-SLAPP statute protects any act in furtherance of the right to petition, including communications within the context of litigation and settlement. The court further concluded the law firm had not demonstrated a probability of success on its claims. Accordingly, the court granted Abernethy's motion. While we agree with the trial court that the contested causes of action fall within the anti-SLAPP statute, we find the law firm demonstrated the requisite minimal merit to proceed, and we therefore reverse the order and remand for further proceedings.

I

FACTS

We limit our review of the facts to those directly involving Abernethy, omitting mention of other defendants when possible.

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

*A. The Underlying Case*

In brief, the underlying lawsuit, *Modarres v. Thomas*, concerned a dispute between Farah Modarres and Dave Thomas over a single-family home project. (See *Modarres v. Thomas* (Apr. 13, 2016) G048684 [nonpub. opn.] (*Modarres*).) The law firm represented Modarres on a contingent fee basis from 2008 to 2017. The agreement included a lien provision which stated the law firm was entitled to its fees even if it withdrew from the case.

Following a discovery dispute, in 2011, terminating sanctions were granted against Thomas and his default was entered. (*Modarres*, *supra*, G048684.) After trial as to the other defendants, judgment was entered jointly and severally against Thomas and the other defendants for $272,000 in compensatory and $1 million in punitive damages, plus interest and costs. (*Ibid*.) This court determined that the trial court did not abuse its discretion by ordering terminating sanctions against Thomas, but remanded for further proceedings on the amount of punitive damages, which had been determined on papers at the default prove-up. (*Ibid*.) It is unclear if anything further was filed by the law firm as to punitive damages in the trial court following this court's opinion in April 2016.

After the appeal in the underlying case, Modarres was still being represented by the law firm. But without the law firm involved, she began discussing settlement with Abernethy, who signed at least one letter in November 2016 as "Counsel for Greyridge 2016 001-Holdings LLC" (Greyridge). That letter set out a proposed memo of agreement in which Modarres agreed to assign her rights to Greyridge in the underlying case for $250,000. During a discussion of terms, Abernethy wrote to Modarres in an e-mail stating that "we will indemnify you for any fees owed to your attorneys for the litigation." He later wrote: "I have clarified paragraph 3 as we discussed, to more clearly indicate that you will be indemnified against any fees and costs already incurred as well as any additional fees and costs incurred following the signing of the agreement."

3

The assignment agreement was entered into on February 16, 2017, between Modarres and Mission Hills Opportunity Fund, LLC (Mission Hills). Among other things, it stated Mission Hills "shall also indemnify and hold Modarres harmless as to any fees or costs she may owe her counsel for representation in the Lawsuit as of the date of this Agreement, and any additional fees and costs she may incur in relation to the Lawsuit or this Agreement subsequent to the execution of the Agreement."

A notice of assignment, signed by Abernethy, was filed in superior court on May 22, 2017. The underlying case was dismissed on June 23, 2017. According to the law firm, Mission Hills, Abernethy, Modarres, and others engaged in a scheme to deprive the law firm of its fees.

## B. The Instant Case

Several weeks after *Modarres* was dismissed, the law firm filed the instant case against Mission Hills and Modarres. Through a Doe amendment in 2019, Abernethy and Thomas were added as defendants. The law firm filed a third amended complaint[2] in July 2019, naming Abernethy in, among others, causes of action for intentional interference with contractual relations, unlawful and unfair business practices, and accounting.

In sum, the complaint alleged Mission Hills was Thomas's alter ego and was formed for the purpose of defrauding the law firm. It further alleged Mission Hills knew or should have known of the agreements between the law firm and Modarres, and by accepting the assignment, disrupted those agreements and relationships.

As to Abernethy, the third amended complaint alleged he was hired to contact Modarres under the guise that he was separate from Thomas, when in fact he was not. If he was not separate, Abernethy was not allowed to contact Modarres directly

---

[2] There is controversy about this complaint's validity, which we will discuss below.

4

under the Rules of Professional Conduct. Abernethy had originally contacted Modarres as counsel for Greyridge, an LLC created by Thomas's attorney, David Epstein. According to the complaint, both Greyridge and Mission Hills "were created and managed by David Epstein, both had identical business addresses, and both lacked any additional incorporation information or organization documents." The complaint alleged Mission Hills was created "to funnel money from one LLC to another for the payment [of $250,000 for the assignment of rights] to Modarres. The entities were necessary to appear as though the funds were not coming from Thomas or his related associations to avoid suspicion of wrongdoing." The actions of Modarres, Epstein, and Abernethy, the law firm claimed, deprived the law firm of a higher contingent fee amount by settling a case for $250,000 that was likely worth more than $1 million.

Abernethy filed the instant motion to strike the third amended complaint in August 2019. The court granted the motion in October. Pending this appeal, all other proceedings in this action are stayed.

II

DISCUSSION

A. *The Operative Complaint*

The law firm argues the third amended complaint was not valid, and therefore the court could not have granted Abernethy relief. The law firm therefore wants this court to reverse the order but nonetheless opine on the anti-SLAPP motion. As the law firm should be aware, however, this court does not issue advisory opinions. (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 542.) If we find the trial court erred by considering the third amended complaint, the proper course of action is a simple reversal on that ground only.

The trial court described the difficulty with the instant complaint as follows: "On July 15, 2019, the court issued an order based on the parties' stipulation

5

directing Plaintiff to file its Third Amended Complaint by July 22, 2019. . . .  For unknown reasons, Plaintiff did not do so.  Plaintiff apparently did not attempt to file its Third Amended Complaint until July 26, 2019, at which time the Clerk's Office rejected the proposed Third Amended Complaint.  Plaintiff never made any further attempt to file its Third Amended Complaint.  As a result of Plaintiff's inexplicable failure to comply with the July 15, 2019 order – an order Plaintiff requested in its Stipulation – the Second Amended Complaint, filed June 19, 2018, remains the operative pleading in the court file.

"On August 6, 2019, Defendant D. Scott Abernethy filed a motion to strike portions of the Third Amended Complaint pursuant to California Code of Civil Procedure § 425.16 and a demurrer to the Third Amended Complaint.  Both motions are scheduled for hearing on October 31, 2019.  In its oppositions to both motions, Plaintiff argues that the court should deny the motions because the Third Amended Complaint 'does not exist.'  Plaintiff's argument is rejected.  Both Plaintiff and Abernethy have long known about the Third Amended Complaint, both Plaintiff and Abernethy address its merits in their briefs on Abernethy's motions, and Plaintiff does not claim any prejudice from the court's addressing Abernethy's motions on the merits.  At the hearing, all parties agreed that the court should deem the Third Amended Complaint filed as of July 22, 2019 – the date by which the court ordered Plaintiff to file it – and address both of Abernethy's motions on their merits."

The court is correct.  During the hearing, the court noted its tentative stated that it deemed "'the third amended complaint filed as of July 22nd, 2019, the date by which the court order [*sic*] plaintiff to file it, and will address both of Abernethy motions on their merits.'"  The court then asked the law firm's counsel if there was any objection. Counsel stated:  "No."

Despite the court's clarity that it ordered the third amended complaint as the operative complaint, the law firm nonetheless raises this issue on appeal, claiming: "Because the Motion goes to a non-existent pleading, Abernethy cannot obtain the relief

6

requested. As such, this Court is justified in denying the Motion in its entirety on procedural grounds." We are baffled that the law firm would choose to raise this issue – settled by its own agreement – once again. Based on its own stipulation, the instant complaint is the operative complaint. This argument is simply without merit.

## B. *The Anti-SLAPP Statutory Framework and Standard of Review*

The anti-SLAPP statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. (See *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)

An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

7

To determine whether an anti-SLAPP motion should be granted or denied, the trial court engages in a two-step process. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).)'" (*Jarrow Formulas*, *Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

If that threshold is met, courts then look to the second step, determining whether the plaintiff has demonstrated a probability of prevailing on the merits. To do so, the plaintiff must state and substantiate a legally sufficient claim (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123 (*Briggs*), thereby demonstrating the case has at least "'"minimal merit."'" (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1105.)

On appeal, "[w]e review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court." (*Cole v. Patricia A. Meyer & Associates, APC*, *supra*, 206 Cal.App.4th at p. 1105.) In conducting our review, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

*C. Protected Activity*[3]

We must first decide whether the challenged claims arise from acts in furtherance of Abernethy's right of free speech or right of petition under one of the categories set forth in section 425.16, subdivision (e). The law firm argues that the cases Abernethy cited in the trial court are distinguishable on their facts, but that alone is insufficient. It does not cite any cases where a third party to underlying litigation, when it becomes involved in the case, is not protected under the statute. The law firm also argues there is "a trend . . . narrowing the scope of what is considered to be protected activity," without citing cases showing the specific applicability of any such trend to this case. Indeed, as the California Supreme Court has noted, by its plain language the anti-SLAPP statute is to be "'construed broadly'" to achieve its stated ends. (*Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at pp. 59-60.)

To determine whether the challenged causes of action arise from acts of free speech or petition, "[w]e examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies . . . ." (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520.) The law firm argues the principal gravamen is Abernethy's wrongful acts of interfering with the relationship between itself and its client. But in doing so, the law firm sets forth not facts but legal conclusions – that the acts were wrongful and that they interfered with the relationship. The bare facts, without assigning motives or legal labels to them, are that Abernethy became involved in an already existing lawsuit between two parties. He approached one of them, proposed an assignment, negotiated and executed it. This case, therefore, is not about activities tangential to a lawsuit – it is entirely about an existing

_____

[3] The law firm claims that Abernethy's brief is limited to discussing only the facts he raised in his original motion. He is limited to the *record* on appeal, which includes the third amended complaint, and on de novo review, he may raise any legal arguments supported by facts in the record.

9

lawsuit and Abernethy's role in concluding it. The third amended complaint itself says so – it claimed Abernethy committed tortious conduct through his role in assigning and dismissing the underlying lawsuit.

The anti-SLAPP statute includes within its ambit "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).) It has been widely held that conduct concerning litigation that takes place outside of court may be protected under the anti-SLAPP statute. This includes conduct from filing an insurance claim as a prerequisite to litigation (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 825), to counseling a tenant in anticipation of litigation (*Briggs*, *supra*, 19 Cal.4th at pp. 1109-1111), to soliciting litigation by others (*Rubin v. Green* (1993) 4 Cal.4th 1187), to communications in the course of settlement negotiations (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963).

Here, Abernethy was directly involved in the ongoing litigation through his conduct, and even if that conduct misrepresented motives or the purported involvement of Thomas, it can nonetheless be protected activity if it concerns litigation. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) There is no question that in this particular instance, the conduct the law firm contends is tortious concerned the underlying litigation in every respect; indeed, it concerned nothing else. Accordingly, we find the alleged conduct falls within the ambit of the anti-SLAPP statute.

## D.  Minimal Merit

Once we determine that the anti-SLAPP statute applies, the burden then shifts to the plaintiff to demonstrate a probability of prevailing "'by showing that the claim has "minimal merit."'" (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 537.) If the plaintiff does so, the motion to strike under the anti-SLAPP statute must be denied. To establish the requisite probability of prevailing, the plaintiff must state and substantiate a

10

legally sufficient claim. (*Briggs*, *supra*, 19 Cal.4th at pp. 1122-1123.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) The plaintiff's burden to establish a probability of prevailing on its claim must be compatible with the early stage at which the motion is brought, and the parties' limited opportunity to conduct discovery. (*Wilcox v. Superior Court*, *supra*, 27 Cal.App.4th at pp. 823-824.) We do not weigh the evidence, but accept as true all evidence favorable to the plaintiff. (*Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 746.)

To determine whether the cause of action has the requisite minimal merit, we begin with its elements. "The elements of a cause of action for interference with contractual relations are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages. [Citation.] Proof the interfering conduct was wrongful, independent from the interference itself, is not required to recover for interference with contractual relations. [Citation.]" (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 237-238.)

The law firm argues it has evidence, in the form of Abernethy's e-mails, of the following, which it contends is sufficient evidence that Abernethy's acts intended to induce a breach or disruption of the attorney-client relationship, to the law firm's detriment: "Abernethy 1) negotiated the substantive terms of the Assignment with Modarres for at least four months with full knowledge of her Agreement with Appellant and the lien contained therein; 2) induced Modarres to take less money than she would have recovered in a judgment knowing her motivation was to avoid having to pay

11

Appellant and fulfill her obligations under the Agreement; 3) induced Modarres to execute an assignment of her rights in the underlying matter without affording her the assistance of her counsel; 4) lied to Modarres when he represented to her that Mission Hills would pay Appellant, further inducing her to execute the Assignment with that false representation; 5) conspired with Thomas to create a shell entity Mission Hills (for which he is supposedly the person most knowledgeable, yet he testified that he has no knowledge of anything connected to Mission Hills) through which money could be funneled improperly from Thomas to Modarres as settlement for *Modarres v. Thomas*; 6) oversaw the funneling of the money to Modarres without the assistance of her counsel; and 7) communicated with Modarres for at least as long as four months knowing full well she was represented by counsel. Further, the emails establish that Abernethy was responsible for ultimately wiring the $250,000 of settlement funds to Modarres, directly contradicting Abernethy's testimony under oath that he had absolutely no knowledge of any actors behind Mission Hills, no knowledge of where this $250,000 came from, how it was wired, or who transferred the funds into the newly-created entity to then pay Modarres."

Abernethy argues two points in response: First, ultimately, it was up to Modarres, not the law firm, to decide whether to settle the case, despite the language in the law firm's agreement to the contrary. (See, e.g., *Whittier Union Sch. Dist. v. Superior Court* (1977) 66 Cal.App.3d 504, 508-509; Rules Prof. Conduct, rule 1.2(a) ["A lawyer shall abide by a client's decision whether to settle a matter"].) Second, under the terms of the assignment, Mission Hills expressly agreed to indemnify Modarres as to any fees or costs she owed the law firm.

These facts are true and supported by the evidence. Nonetheless, the import of those facts cannot be decided by us, and they do not constitute a complete defense as a matter of law. Whether Abernethy or Thomas's counsel violated the Rules of Professional Conduct may be an issue the State Bar must wrestle with someday, but

12

here, the facts surrounding their contact with a represented party are sufficient to state a prima facie case for interference with contractual relations. There is no question that Thomas was involved with Mission Hills, and that Abernethy and Thomas were acting together (one of the e-mails states as much). The assignment itself makes clear that Mission Hills knew Modarres was represented by an attorney. However they choose to present the facts, it seems unavoidable that this was simply a backdoor settlement effort designed to ignore the fact of the law firm's relationship with Modarres, and by doing so, to interfere with it. It is true that had this settlement offer gone through the law firm, the law firm would have been required to accept it, had Modarres insisted. But Modarres was nonetheless entitled to the advice of the law firm in reaching that decision.

Further, whether Mission Hills ultimately had to indemnify Modarres for attorney fees is largely irrelevant, particularly if, as the complaint alleged, Mission Hills was simply a shell entity designed for the express purpose of settling the underlying case. There is no evidence that Mission Hills remains solvent, and the effort involved in collecting its fees from Mission Hills – as this lawsuit demonstrates – are self-evidently far more difficult than collecting in a contingent fee case.

While the finders of fact may completely disagree with our analysis of the facts once all the evidence is presented – as is their purview – we find the complaint sufficiently alleged a cause of action for interference with contract, and the law firm demonstrated a probability of prevailing. Accordingly, both that claim and the related claims for unfair business practices and accounting may proceed.

## III

## DISPOSITION

The trial court's order is reversed and the matter is remanded for further proceedings.  The law firm is entitled to its costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


GOETHALS, J.

14